GEORGE MCNEESE V. THE STATE.

No. 22810. Delivered April 5, 1944.
Rehearing Denied May 24, 1944.

The opinion states the case.

*G. C. Harris,* of Greenville, for appellant.

*Ernest S. Goens,* State's Attorney; of Austin, for the State.

GRAVES, Judge.

Appellant was charged by complaint and information filed in the county court of Hunt County with maintaining a nuisance, and by the jury fined the sum of $25.00.

This prosecution is based on Art. 695 of the Penal Code, which reads as follows:

"Whoever shall carry on any trade, business or occupation injurious to the health of those who reside in the vicinity, or suffer any substance which has that effect to remain on premises in his possession, shall be fined not less than ten nor more than one hundred dollars. Each day is a separate offense."

It was charged that appellant "did then and there unlawfully suffer to be and remain on premises then and there in his possession and under his control certain substances, and things and conditions injurious to the health of all those persons who then and there reside in the vicinity of said premises which said substances and other matters and things were, to-wit: barrels, kegs and cans of water full of mosquitoes and mosquito larva; excreta deposited on the surface of the soil and not protected from flies and other germ carriers; and much rubble and rubbish in which flies and rodents can harbor and breed, and become germ carriers; and very high thick weeds over most of said premises; which are located and situated on Park Street in the city of Commerce, Hunt County, Texas, the same being 1509 Park Street," etc.

Appellant has many bills of exceptions relating to the information, and claiming the same upon its face bears the allegations that evidence that the acts charged therein, if true, do not constitute a violation of the law. It is not charged therein that appellant carried on any trade, business or occupation that was injurious to health, but we do think it charges that appellant suffered substances which were injurious to the health of those who resided in the vicinity to remain on premises in his possession. It is urged that mosquitoes and their larvae were not substances as contemplated by the law; that mosquitoes are insects, and therefore the incidental charging that mosquitoes were present in barrels and kegs of water should cause the complaint and information to be quashed. We do think that barrels of water and kegs of water are substances, and the further fact that same were a breeding place for mosquitoes merely further establishes the fact of their injurious condition to the health of those in the vicinity, the physician witness testifying that many

diseases dangerous to public health could be carried by the mosquitoes and flies to those being in the vicinity of such breeding places.

Appellant also excepted to the proof from Dr. Waller that after he had examined these premises he gave appellant notice to clean up such premises. It seemed that appellant did not object prior to the witness' affirmative answer, but did ask the trial court to instruct the jury not to consider the question and answer for any purpose, which the court refused to do. We think the question was admissible, at least it did show knowledge upon appellant's part of the unsanitary condition of such premises prior to the time complaint was filed.

Complaint is also made because the trial court allowed Dr. Waller, city health officer of Commerce, to testify that such premises were in an unsanitary condition at the times he examined such. We think the doctor had shown his qualification as an expert, and his opinion could be expressed on such matter as being the subject of an expert's opinion. We also think that Dr. Waller could testify as to what condition he found these premises in at the time alleged, and what he found there, and whether, in his opinion, same were injurious to the health of persons living in that vicinity.

Appellant also complains because the State did not show that the health of any person living in this vicinity was injuriously affected by the matters and things found on appellant's premises. We do not think the statute intended to convey such a meaning. That would be locking the stable after the horse was taken. The statute carries with it a preventive idea primarily and should be a safeguard to the health of the community rather than a punishment for having caused the spread of disease. The statute should be construed to mean matters calculated to be injurious to health, and it would not be expected of the State to show that a mosquito bred in one of these barrels had bitten a person in such vicinity and infected such person with matters injurious to his health.

Appellant also complains because the trial court failed to define the word "nuisance" in his charge to the jury. The statute itself does not mention the word "nuisance" and neither does the complaint and information allege that appellant maintained a nuisance. They merely allege what appellant did by allowing certain substances to remain on his property. In the court's charge he does tell the jury that appellant is charged with

maintaining a nuisance by doing certain things, thus setting forth the matters and things complained of, and we think such could be and doubtless was used by the jury in determining that such acts constituted matters that were injurious to public health, and therefore a nuisance. We think the statute sets forth two ways in which this law can be violated, one being by carrying on a trade, business or occupation, and also by suffering premises under one's control to contain certain substances, either class being injurious to public health. We think the same is severable, either one being but a different way of committing the same offense, and the court was correct in charging only on the latter portion of the statute; and although the trial court did set forth in his charge the entire statute denouncing both methods of violating the law, he also further on in his charge only submitted the latter portion of such statute to the consideration of the jury, as was done in the case of Simons v. State, 34 S. W. 619.

The testimony shows that upon premises in the city of Commerce, in Hunt County, Texas, the health officer and the mayor found barrels and kegs of water containing mosquitoes and their larvae and filth, and rubbish all around the premises of appellant, and an old chicken house used as a surface toilet, with excreta on the ground, the grass knee high, and weeds higher than a man's head, cans, bottles and tubs full of water, flies and mosquitoes and rubbish and filth all over the lot. There were inhabited houses near by, the health of whose inhabitants could have been affected by the filth and rubbish found on this place; this was an inhabited locality on a street in the city of Commerce, with people living near enough to be contaminated by flies and mosquitoes therefrom, and was denominated by such health officers as injurious to the health of persons living in that vicinity.

The purpose of the statute is in line with the progress not only in curative medicine but also in preventive medicine, and since it has been definitely ascertained by scientific research that diseases injurious to public health can be initiated by unsanitary conditions such as testified to herein, the states of the Union as well as the Federal government have interested themselves in eliminating the cause of disease prior to an attempt to cure same after the disease has been contracted. That such laws vitally affecting the health of the people are within the legitimate police power is no longer questioned, and they do not offend against any provision of our Constitution. Power to enact laws for sanitary purposes and protection of the public

is inherent in every sovereignty. 21 Tex. Jur., 507, and cases there cited. All incorporated cities and towns as well as counties must have a health officer. R. C. S., Arts. 4425 and 1071, whose duties are prescribed by law, Art. 4427, R. C. S., among them being the sanitation of the county, as well as many other powers under the rules of the State Board of Health. It should be remembered that a citizen enjoys an inherent and constitutional right to use his property as he may see fit only so long as the use made of it does not interfere with the rights of others. 9 Tex. Jur., 521. It was said by the Supreme Court in Spann v. City of Dallas, 111 Texas, 350-357:

"Since the right of the citizen to use his property as he chooses so long as he harms nobody, is an inherent and constitutional right, the police power cannot be invoked for the abridgement of a particular use of private property, unless such use reasonably endangers or threatens the public health, the public safety, the public comfort or welfare."

We think it is fairly clear that the condition of appellant's property reasonably endangered and threatened the health of the public; that the legislature had the power to declare such matters to be those to be regulated by law as is done in Art. 695, P. C., and same does not offend against the Constitution, nor appellant's inherent rights.

We have considered all bills in the record, and finding no error evidenced, the judgment herein is affirmed.

ON MOTION FOR REHEARING.

DAVIDSON, Judge.

In his motion for rehearing, appellant challenges the correctness of the conclusion expressed in our original opinion.

The record has again been examined in the light of appellant's contention, and we remain convinced of the correctness of the conclusions expressed originally.

The motion for rehearing is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.